# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JOE P. HAMILTON,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00018 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Joe P. Hamilton, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hamilton protectively filed his initial application for SSI on or about October 20, 2000, alleging disability as of January 31, 1998, based on neck pain, a herniated disc, right arm pain, low back pain, headaches, hypertension, nervousness and depression. (Record, ("R."), at 59-65, 77, 94, 100.) The claim was denied initially and upon reconsideration. (R. at 32-34, 35, 37-38.) Hamilton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 39.) The ALJ held a hearing on August 29, 2001, at which Hamilton was represented by counsel. (R. at 257-75.) By decision dated September 15, 2001, the ALJ denied Hamilton's claim. (R. at 286-91.) After the ALJ issued his decision, Hamilton pursued his administrative appeals. (R. at 27.)

Hamilton filed a second application for SSI on September 28, 2001, alleging disability as of September 16, 2001.[2] (R. at 295-307.) This claim was denied initially

---

[2]The ALJ issued a decision denying Hamilton's initial application for SSI on September 15, 2001. (R. at 286-91.) Therefore, Hamilton is claiming a disability date of September 16, 2001, one day after the ALJ's initial decision. (R. at 296.)

and on reconsideration.[3]  (R. at 293.) By order dated September 26, 2002, the ALJ vacated the reconsideration determination and remanded Hamilton's case to the state agency for evaluation of new evidence.  (R. at 292-94.) On December 19, 2002, the state agency issued a revised reconsideration determination finding Hamilton disabled beginning September 1, 2001.  (R. at 308.) On September 24, 2003, the Appeals Council vacated the hearing decision dated September 15, 2001, consolidated both claims, finding that the state agency had invaded the period previously adjudicated, and remanded the claims for further consideration and the issuance of a new decision. (R. at 46-49.) On remand, a second hearing was held on April 27, 2004, at which Hamilton was not represented by counsel.  (R. at 276-82.)

By decision dated June 2, 2004, the ALJ denied Hamilton's claim. (R. at 13-21.)  The ALJ found that Hamilton had not engaged in substantial gainful activity since October 20, 2000. (R. at 20.)  The ALJ also found that the medical evidence established that Hamilton suffered from a severe impairment, namely a musculoskeletal impairment, but he found that Hamilton did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ found that Hamilton's allegations were not totally credible. (R. at 20.) The ALJ found that Hamilton had the residual functional capacity to perform medium[4] and light work[5] that did not require

---

[3]These documents are not contained in the record.

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2006).

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2006).

using his head in repetitive twisting motions, using his arms above shoulder level or exposure to vibration. (R. at 20.) The ALJ found that Hamilton was unable to perform his past relevant work as a mechanic and a laborer. (R. at 20.) Based on Hamilton's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Hamilton could perform jobs existing in significant numbers in the national economy, including those of a hand packer, a food prep worker, a ticket clerk, a counter clerk, a cashier, a parking lot attendant and a gate guard. (R. at 20.) Thus, the ALJ found that Hamilton was not disabled under the Act and was not eligible for benefits. (R. at 20-21.) *See* 20 C.F.R. § 416.920(g) (2006).

After the ALJ issued his decision, Hamilton pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 7-10.) Hamilton then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2006). The case is before this court on Hamilton's motion for summary judgment filed August 15, 2006, and the Commissioner's motion for summary judgment filed September 18, 2006.

## II. Facts

Hamilton was born in 1959, (R. at 59), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c) (2006). Hamilton has a ninth-grade education and past relevant work experience as a mechanic and a general laborer. (R. at 78, 83.)

Donna Bardsley, a vocational expert, testified at Hamilton's 2001 hearing. (R. at 272-74.) Bardsley was asked to consider an individual of Hamilton's age,

-4-

education and work experience, who had the residual functional capacity to perform light work that did not require him to repetitively turn his head and that allowed frequent postural changes. (R. at 273.) Bardsley stated that there were jobs available that such an individual could perform, including those of a cashier, an information clerk, a sales clerk, a hand packager, a sorter, an assembler and an inspector. (R. at 273.) Bardsley was asked to consider the same individual, but who also was limited as indicated by the assessment completed by Robert S. Spangler, Ed.D., a licensed psychologist, on August 8, 2001. (R. at 195-96, 273-74.) Bardsley stated that there would be no jobs available that such an individual could perform. (R. at 274.) Cathy Sanders, another vocational expert, testified at Hamilton's 2004 hearing. (R. at 280-82.) When asked to consider the same individual who was limited as indicated by the testimony of Dr. Griffin, Sanders stated that there were jobs available that such an individual could perform, including jobs as a food preparation worker, a ticket clerk, a counter clerk, a hand packager, a cashier, a parking lot attending, an unarmed gate guard and an information clerk. (R. at 281.)

Dr. Edward Griffin, M.D., also testified at Hamilton's 2004 hearing. (R. at 278-80.) Dr. Griffin stated that Hamilton's impairments did not meet or equal a medical listing. (R. at 280.) Dr. Griffin stated that Hamilton should not be required to turn his head around rapidly or look up rapidly on a repeated basis, that he would be limited to lifting and carrying objects weighing up to 30 pounds occasionally and 15 pounds frequently, that he should not perform work over his shoulder or reach above his head on a sustained basis and that he should not work around heavy powered equipment. (R. at 280.)

In rendering his decision, the ALJ reviewed medical records from St. Mary's

-5-

Hospital; Dr. Ken W. Smith, M.D.; The Regional Rehab Center; Dr. Michael Hartman, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; Wise County Schools; Robert S. Spangler, Ed.D., a licensed psychologist; Veterans Administration Medical Center; and Dr. Ranjy C. Basa, M.D. Hamilton's attorney submitted additional medical records from Dr. Basa and John Powell, P.A., a physician's assistant, to the Appeals Council.[6]

Hamilton was seen at the emergency room in May and June 2000 for complaints of right shoulder pain. (R. at 105-06.) An x-ray of Hamilton's right shoulder was normal. (R. at 108.) An x-ray of Hamilton's cervical spine taken on June 15, 2000, showed mild spondylosis at the C6-7 level. (R. at 115, 123.) An MRI of Hamilton's cervical spine showed a large rightward soft disc herniation at the C6-7 level. (R. at 116, 122.)

On October 6, 2000, Hamilton underwent an anterior cervical discectomy and fusion of the C6-7 disc space. (R. at 139-46.) On October 12, 2000, Dr. Ken W. Smith, M.D., saw Hamilton for cervical and right upper extremity pain following a discectomy and fusion. (R. at 126-27.) Hamilton had normal strength in the upper and lower extremities. (R. at 126.) On November 2, 2000, Dr. Smith saw Hamilton for his complaints of cervical pain. (R. at 124-25.) Hamilton had normal strength in the upper and lower extremities. (R. at 124.) X-rays revealed the bone graft in good position at the C6-7 level with excellent progression of the fusion. (R. at 124.) Dr.

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-10), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Smith diagnosed cervical herniated nucleus pulposus without myelopathy. (R. at 125.) On December 18, 2000, Dr. Smith reported that Hamilton demonstrated an adequate attention span and ability to concentrate. (R. at 156.) Hamilton had good recent and remote memory. (R. at 156.) Dr. Smith reported that Hamilton could continue his employment and activities as tolerated. (R. at 156.)

On February 2, 2001, Dr. Michael Hartman, M.D., a state agency physician, indicated that Hamilton had the residual functional capacity to perform light work. (R. at 160-67.) He noted no postural, manipulative, visual, communicative or environmental limitations. (R. at 162-64.) This assessment was affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on April 11, 2001. (R. at 167.)

On March 5, 2001, x-rays of Hamilton's cervical spine were taken at the Veterans' Administration Medical Center, which showed minimal spondylosis and fusion of the spine. (R. at 221, 227.) X-rays of Hamilton's lumbar spine showed mild scoliosis and spondylosis. (R. at 221, 227.) On October 23, 2001, an MRI of Hamilton's lumbosacral spine showed evidence of spondylosis associated with degenerative disc disease and bulging of the discs at multiple levels. (R. at 201, 214.) There was also disc herniation at the L4-L5 level. (R. at 201, 214.)

On August 8, 2001, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Hamilton at the request of Hamilton's attorney. (R. at 188-92.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), was administered, and Hamilton obtained a verbal IQ score of 84, a performance IQ score of 80 and a full-scale IQ score of 80. (R. at 190-91.) Spangler reported that Hamilton's

performance and full-scale IQ scores were considered invalid.(R. at 191.) He reported that these scores were underestimates due to erratic concentration secondary to pain and discomfort, intratest scatter, anxiety and depression. (R. at 191.) Spangler diagnosed alcohol dependence, in early remission, cannabis use in early remission, an adjustment disorder with mixed features, moderate, with suicidal ideation, low average intelligence and mild to moderate erratic concentration. (R. at 191.)

Spangler completed a mental assessment indicating that Hamilton had a limited but satisfactory ability to follow work rules, to use judgment, to function independently, to understand, remember and carry out simple instructions, to maintain personal appearance and to demonstrate reliability. (R. at 195-96.) He indicated that Hamilton had a limited but satisfactory to a seriously limited, but not precluded, ability to maintain attention/concentration. (R. at 195.) Spangler indicated that Hamilton had a seriously limited, but not precluded, ability to relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 195-96.) Spangler also indicated that Hamilton had no useful ability to understand, remember and carry out complex instructions. (R. at 196.)

On November 9, 2001, Dr. Ranjy C. Basa, M.D., saw Hamilton for complaints of neck and back pain and depression. (R. at 208.) Dr. Basa diagnosed chronic neck and back pain, depression, gastroesophageal reflux disease and hypertension. (R. at 208.) On February 7, 2002, Hamilton continued to complain of low back pain. (R. at 232.) Dr. Basa reported that Hamilton was grimacing in pain, and he noted muscle spasms in Hamilton's lower back. (R. at 232.) On February 1, 2002, Dr. Steven C.

Hamel, M.D., reported that examination showed normal gait, normal motor activity and normal reflexes. (R. at 252.) On April 29, 2002, Dr. Basa completed a mental assessment indicating that Hamilton had a seriously limited, but not precluded, ability to make occupational, performance and social adjustments. (R. at 247-49.)

On May 3, 2002, Dr. Basa completed a medical assessment indicating that Hamilton could occasionally lift and carry items weighing up to 15 pounds and that he could frequently lift and carry items weighing up to 10 pounds. (R. at 244-46.)[7] He indicated that Hamilton could stand and/or walk for up to four hours in an eight-hour workday, and that he could do so for one hour without interruption. (R. at 244.) Dr. Basa indicated that Hamilton could sit for four hours in an eight-hour workday, and that he could do so for up to one hour without interruption. (R. at 245.) He indicated that Hamilton could occasionally climb, kneel and balance. (R. at 245.) He indicated that Hamilton should never stoop, crouch or crawl. (R. at 245.) Dr. Basa indicated that Hamilton was limited in his ability to reach, handle and push/pull. (R. at 245.) He further indicated that Hamilton was limited in his ability to work around moving machinery. (R. at 246.)

On March 15, 2002, John Powell, P.A., a physician's assistant, saw Hamilton for low back and bilateral lower extremity pain. (R. at 250-51.) Straight leg raising tests were positive on the left. (R. at 251.) Powell reported no motor or sensory deficit. (R. at 251.) Powell diagnosed L4-L5 central disc herniation with bilateral lower extremity radiculopathy. (R. at 251.)

---

[7]This assessment has Dr. Basa's name on the first page, however, it was actually signed by Dr. Mark O'Brien, M.D. (R. at 244-46.) Dr. O'Brien's relationship with Hamilton is unclear.

-9-

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 2, 2004, the ALJ denied Hamilton's claim. (R. at 13-21.) The ALJ found that the medical evidence established that Hamilton suffered from a severe impairment, namely a musculoskeletal impairment, but he found that

Hamilton did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ found that Hamilton's allegations were not totally credible. (R. at 20.) The ALJ found that Hamilton had the residual functional capacity to perform medium and light work that did not require using his head in repetitive twisting motions, working with his arms above shoulder level or exposure to vibration. (R. at 20.) The ALJ found that Hamilton was unable to perform his past relevant work as a mechanic and a laborer. (R. at 20.) Based on Hamilton's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Hamilton could perform jobs existing in significant numbers in the national economy. (R. at 20.) Thus, the ALJ found that Hamilton was not disabled under the Act and was not eligible for benefits. (R. at 20-21.) *See* 20 C.F.R. § 416.920(g) (2006).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore,

-11-

while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Hamilton argues that the ALJ erred in failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 13-18.) Hamilton argues that the ALJ erred in rejecting the opinion of Dr. Basa. (Plaintiff's Brief at 18-20.) Hamilton further argues that the ALJ erred by failing to properly evaluate his complaints of pain. (Plaintiff's Brief at 20-25.)

The ALJ in this case found that Hamilton did not suffer from a severe mental impairment. (R. at 19.) Based on my review of the record, I do not find that substantial evidence exists to support this finding. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the

-12-

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

In August 2001, Spangler evaluated Hamilton and diagnosed alcohol dependence, in early remission, cannabis use, in early remission, an adjustment disorder with mixed features, moderate, with suicidal ideation, low average intelligence and mild to moderate erratic concentration. (R. at 191.) In addition, the record shows that Dr. Basa treated Hamilton for three months for depression. (R. at 208, 238, 240.) Both Spangler and Dr. Basa placed limitations on Hamilton's occupational, performance and social adjustments. (R. at 195-96, 247-49.) Spangler specifically attributed Hamilton's work-related limitations to his adjustment disorder. (R. at 195-96.) The ALJ noted in his decision that Hamilton had an adjustment disorder that was considered moderate, however, he found that Hamilton did not suffer from a severe impairment. (R. at 19.) The ALJ gave greater weight to the opinion of Dr. Griffin in finding that Hamilton did not suffer from a severe mental impairment. (R. at 18.) However, it appears that Dr. Griffin is not a psychiatric or psychological expert, but a medical doctor. Furthermore, Dr. Griffin offered no opinion as to the validity of the opinions of Spangler or Dr. Basa as to Hamilton's mental impairments. (R. at 278-80.) Based on this, I do not find that substantial evidence exists to support the ALJ's finding that Hamilton did not suffer from a severe mental impairment.

Hamilton further argues that the ALJ did not properly evaluate his allegations

of pain. (Plaintiff's Brief at 20-25.) Based on my review of the ALJ's decision, I find that the ALJ considered Hamilton's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Hamilton's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 18-19.) While Hamilton was symptomatic prior to and following his cervical disc surgery, after a healing

-14-

period, the record does not show the existence of a medically determinable impairment or combination of impairments which would be expected to result in severe and disabling pain. In December 2000, Dr. Smith reported that Hamilton had normal motor strength and normal reflexes. (R. at 156.) He released Hamilton to continue his employment and activities as tolerated. (R. at 156.) While Hamilton has been diagnosed with a herniated lumbar disc, there is no evidence of any reflex or sensory abnormality or any decrease in muscle tone and strength. (R. at 251-52.) Based on this, I find that the ALJ considered Hamilton's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Hamilton's allegations of disabling pain were not totally credible.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the ALJ's finding that Hamilton did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the ALJ's finding with regard to Hamilton's physical residual functional capacity; and

3. Substantial evidence does not exist to support the ALJ's finding that Hamilton was not disabled under the Act.

-15-

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hamilton's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying benefits, and remand the case to the Commissioner for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     This 26th day of April 2007.


/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE